# Allsup, Inc.
# Managed Disability Benefit Integration
# Agreement for Services

This Managed Disability Benefit Integration Agreement for Services (this "Agreement"), is made and entered into as of the 1st day of December, 2001, by and between Allsup, Inc. ("Allsup") and The Prudential Insurance Company of America (the "Client Company").

1. **SERVICES:** Allsup agrees to provide the services selected by the Client Company, as specified in the attachment(s), which are made a part of this Agreement.

2. **FEES:** The Client Company agrees to pay fees for the services selected, as provided in the attachment(s) hereto. Any fees or part thereof, billed by Allsup to the Client Company under this Agreement, shall be paid by the Client Company to Allsup within thirty (30) days of the invoice date. Any amounts not paid to Allsup by the due date thereof, shall bear interest at the rate of twelve percent (12%) per annum (one percent (1%) per month) or, if lower, the highest interest rate permitted by law.

3. **TERM:** The term of this Agreement shall commence on the 1st day of December, 2001, and shall continue in effect thereafter, unless and until canceled by either party as provided for herein.

4. **CANCELLATION:** Either party may cancel this Agreement at any time, upon not less than thirty (30) days prior written notice to the other party. In the event that this Agreement is canceled, the Client Company shall not provide Allsup with any new referrals, but any work in process may, in Allsup's sole discretion, be concluded by it, pursuant to the terms (and for the fees) provided for herein.

5. **RIGHT OF WITHDRAWAL:** Notwithstanding anything to the contrary contained in this Agreement, upon written notice to the claimant and the Client Company, Allsup, by and through its employees, may withdraw, at any time, as a claimant's representative.

6. **INDEPENDENT CONTRACTOR:** This Agreement does not constitute and shall not be construed as constituting a partnership or joint venture between Allsup and the Client Company, it being expressly understood that each party shall act as and be deemed to be an independent contractor. In addition, nothing in this Agreement shall create, or be construed to create, the relationship of employer and employee between Allsup and the Client Company; nor shall Allsup's agents, officers or employees be considered or construed to be employees of the Client Company for any purpose whatsoever.

7. **REVISION OF FEE SCHEDULE:** During the term of this Agreement, Allsup reserves and shall have the right to review and amend its fees for services with respect to any future referrals upon not less than thirty (30) days prior written notice to the Client Company.

8. **DISCLOSURE OF CUSTOMER INFORMATION:** Allsup and Client Company agree that the following shall be effective with respect to disclosures of Customer Information as defined below:

(a) Allsup agrees to regard and preserve as confidential all information accessed by or disclosed to Allsup, by or at the direction of Client Company about a customer of Client Company or any Client

CONFIDENTIAL

Company affiliate, including but not limited to name, address, telephone number, e-mail address, account or policy information, medical information and any list of grouping of customers ("Customer Information"), and to use and disclose such information solely in the manner contemplated and authorized by this Agreement. In this regard and except as may otherwise be required or permitted by law or as may otherwise be permitted by the written authorization of the subject customer, Allsup shall use and disclose (and shall cause its employees to use and disclose) such information only for purposes of providing the services pursuant to this Agreement and for purposes of pursuing benefits payable on behalf of the subject customer (and such customer's "Beneficiaries", as hereinafter defined, if any) under Titles II, XVI, XVIII or XIV of the Social Security Act. Upon termination of this Agreement or completion of the services contemplated in this Agreement, or any time Client Company may so request, Allsup shall promptly return to Client Company or destroy all such Customer Information in its possession.

(b) Allsup certifies that it has implemented and will maintain an effective information security program to protect Client Company's Customer Information, which program includes administrative, technical, and physical safeguards:

(1) to ensure the security and confidentiality of Customer Information;
(2) to protect against any anticipated threats or hazards to the security or integrity of such Customer Information; and
(3) to protect against unauthorized access to or use of Customer Information which could result in substantial harm or inconvenience to Client Company or its affiliates, or to customers of any of them.

(c) In the event Allsup is in material breach of any provisions of this Section 8, it shall immediately advise Client Company and take steps to remedy such breach, including but not limited to protecting customers, Client Company, and Client Company's affiliates against the consequences of any disclosure or use of Customer Information in violation of this Section 8.

9. **USE OF SOCIAL SECURITY NUMBERS:** Effective July 1, 2002 and except as may otherwise be required or permitted by law, Allsup agrees not to include the Social Security number of any claimant referred by Client Company or any Client Company affiliate in any correspondence sent to that claimant. Further, Allsup shall not utilize a Social Security number in any manner prohibited by law.

10. **NON-SOLICITATION:** Allsup agrees not to solicit, encourage or induce claimants to obtain services provided by Allsup except as specifically authorized by Client Company. Allsup further agrees that the names of disability claimants and other such information provided by Client Company are considered to be proprietary information and shall not be released to any other party or used for any purpose, except as otherwise permitted by this Agreement, without the prior written consent of Client Company.

11. **ALLSUP'S BUSINESS METHODS:** The Client Company acknowledges that Allsup has sole and exclusive ownership of all the methods of doing business used in providing its services (including ownership of all patents, copyrights, trademarks, trade secrets and other intellectual property rights pertaining thereto). The Client Company acknowledges further that Allsup's methods of doing business used in providing its services constitute commercially valuable, proprietary, confidential property of Allsup.

CONFIDENTIAL

**12. HOLD HARMLESS:** Allsup agrees to indemnify and hold the Client Company harmless against any claims or damage suits arising out of the misfeasance or malfeasance of Allsup, its employees, officers, agents or representatives in connection with the provision of services under this Agreement. The Client Company agrees to indemnify and hold Allsup harmless against any claims or damage suits arising out of the misfeasance or malfeasance of the Client Company, its employees, officers, agents or representatives in connection with the provision of services under this Agreement.

**13. NOTICES:** Any notice required under this Agreement to be served upon Allsup or the Client Company shall be in writing and shall be effective and deemed delivered: (i) three (3) business days after posting with the United States Postal Service, properly addressed and with the correct postage; (ii) one (1) business day after pick-up by courier service, when sent by overnight courier, properly addressed and pre-paid; or (iii) one (1) business day after the date of the sender's electronic confirmation of receipt, when sent by facsimile transmission. Notices shall be sent to the respective addresses or fax numbers set forth below, unless either party notifies the other in writing of an address or fax number change.

| For Allsup: | For the Client Company: |
| --- | --- |
| Allsup, Inc. | The Prudential Insurance Company of America |
| Attn: Sales and Marketing Department | Attn: John Barilla, Vice President |
| 300 Allsup Place | 290 West Mt. Pleasant Avenue |
| Belleville, IL 62223 | Livingston, NJ 07039 |
| Fax: 618-236-5703 | Fax: 973-548-7854 |

**14. HEADINGS:** Section and other headings are used in this Agreement for convenience of reference only and shall not affect the meaning of any provision of this Agreement.

**15. BINDING EFFECT:** This Agreement shall inure to the benefit of and be binding on the successors and assigns of the parties hereto.

**16. SEVERABILITY OF PROVISIONS:** If any provision of this Agreement or the application of any such provision to any person or circumstance is held invalid, the remainder of this Agreement, and the application of such provision other than to the extent it is held invalid, will not be invalidated or affected thereby.

**17. SURVIVAL:** The provisions of this Agreement (including any attachment hereof), which by their nature extend beyond the expiration or earlier cancellation of this Agreement, shall survive any such expiration or earlier cancellation and will remain in effect.

**18. GOVERNING LAW; INTERPRETATION:** This Agreement shall be construed in accordance with and governed by the laws of the State of Illinois (without giving effect to any principles of Illinois law that would result in the application of a different State's law). In the event this Agreement requires interpretation, such interpretation shall not be more strictly construed against one party, by reason of any rule of construction or authorship.

**19. COUNTERPARTS; SIGNATURES:** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument. For purposes of this Agreement, the parties agree that counterparts signed and transmitted by facsimile or telecopier shall be treated as an original document and shall have the same effect as an original signature on an original document for all purposes including, but not limited to, the execution of this Agreement and the enforcement of same.

D 0051
CONFIDENTIAL

**20. ENTIRE AGREEMENT; MODIFICATIONS:** This Agreement (including the attachment(s) referenced herein) sets forth the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior negotiations or agreements, whether oral or written, relating to the subject matter hereof. It may not be amended or modified, except in a writing signed by both parties.

**21. EXECUTION:** The parties have caused this Agreement to be duly executed by their respective officers, thereunto duly authorized, on the dates shown below.

**ALLSUP, INC.**

BY _Ronald A. Buerger_

TITLE _EVP & COO_

DATE _7/29/02_

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA**

BY _John Banile_

TITLE _VP, Disability Management Service_

DATE _8/5/02_

D 0052
CONFIDENTIAL

## SEAMLESS SOCIAL SECURITY REPRESENTATION AND OVERPAYMENT RECOVERY SERVICES – THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

As described herein, Allsup will represent claimants referred by the Client Company in applications and appeals to establish, or continue entitlement to, disability benefits under Title II of the Social Security Act ("SSDI") and will perform, as applicable to the particular referrals, the services described in this attachment.

The Client Company will refer to Allsup applicants for company sponsored disability benefits that are under age 65 and have been or are expected to be off work long-term (defined as twelve (12) months or longer).

Allsup will screen referrals to determine viable candidates for SSDI entitlement. Those who do not meet the criteria for SSDI will be identified and returned to the Client Company.

Those accepted will be processed for Allsup solicitation of appointment as representative. Applicants will be informed about the financial advantages of securing SSDI entitlement, the impact of integration on their current group disability benefits and the possibility of a retroactive award creating an overpayment of group benefits. Form SSA-1696, Appointment of Representative ("Form SSA-1696"), will be requested.

Upon receipt of the signed Form SSA-1696 from the claimant, the case will be assigned to an Allsup claimant representative. Completed forms will be mailed to the claimant for review and signature. If applicable, such forms will include any ancillary applications for SSDI which relate to the claimant's dependant beneficiaries; provided, that, such dependant beneficiaries reside in the claimant's household and the claimant is legally entitled to act on their behalf (the "Beneficiaries"). When the completed and executed forms are received back by Allsup, all such forms will then be assembled with supporting evidence and filed with the Social Security Administration ("SSA").

If a claim or appeal is denied, Allsup may, if appropriate, initiate proceeding to the next administrative level of appeal. The Client Company will be furnished status reports as claims and appeals move from level to level and will receive a consolidated monthly activity report indicating current year activity of awards, denials and all pending referrals.

The Client Company will be advised, when Allsup is notified of a favorable decision on a claim. When payment detail becomes available, the Client Company will be informed of the date of entitlement, any retroactive SSDI payable, the monthly payment history and the date of entitlement to Medicare benefits.

Allsup will manage claims awards in an effort to recover disability overpayments resulting from retroactive awards of SSDI.

Allsup representatives will elicit claimant interest in using this service to settle overpayments created by retroactive SSDI awards. By an arrangement with the claimant, overpayments may be repaid through a preauthorized withdrawal of funds from the claimant's checking or other deposit account.

Allsup will offer overpayment recovery to eligible claimants or to eligible Beneficiaries, as the case may be.

The Client Company understands and agrees that:

*Replaced by May 3, 04 Amendment*

P-0053
CONFIDENTIAL

1. It will promptly furnish to Allsup a calculation of the gross overpayment for the period represented by the retroactive SSDI award (including any overpayment amount related to a claimant's Beneficiaries) or promptly provide calculation formula for Allsup to calculate the overpayment and, in this event, will promptly confirm all such calculations made by Allsup.

2. It will cease any other overpayment collection efforts against claimants (and their Beneficiaries) who accept and complete this service and will credit to such claimants (and their Beneficiaries) the full amount of any overpayments recovered by Allsup with respect to such claimants (and their Beneficiaries), irrespective of whether the amounts actually tendered by Allsup to the Client Company reflect the withholding by Allsup of any of its fees.

3. Overpayments not recovered by Allsup within sixty (60) days of the receipt of the approved overpayment calculation will be referred back to the Client Company for collection.

**FEES** - Allsup's fees for these services are as follows:

. **Primary Claimant Fees:**
▲▲ **Basic Fee:**
For each claimant represented (i.e., for whom a signed Form SSA-1696 has been received) and who is awarded SSDI, Allsup will charge the Client Company the following fee:

(a) If all or any portion of the overpayment is recovered by Allsup from the claimant, then Allsup's fee will be $2,800.

(b) If no portion of the overpayment is recovered by Allsup from the claimant within sixty (60) days of Allsup's receipt of the approved overpayment calculation from the Client Company, then Allsup's fee will be $2,200.

(c) If no retroactive SSDI is awarded (and therefore no overpayment created) when the claimant is awarded SSDI, then Allsup's fee will be $2,200.

The applicable fee will not be deducted by Allsup from the recovered overpayment, if any, rather, the Client Company will be billed by Allsup for such fee.

2. **Appeals of Awards:**
If a case is awarded by SSA with a less than fully favorable date of disability onset, or awarded for a closed period of disability, the Client Company will pay fees based on the above. If it is in the best interest of the claimant to appeal the less than fully favorable award, the Client Company agrees to pay an additional fee that is the lesser of one and one-half times (1-1/2x) the Primary Insurance Amount (i.e. the full, unadjusted, monthly SSDI as of the date of SSA's notice of the award) (the "PIA") or twenty percent (20%) of any additional retroactive SSDI award, for earlier onset approvals or continuation of payment. This additional fee will be billed to the Client Company by Allsup and not deducted from the recovered overpayment, if any. No additional overpayment recovery fee will be charged by Allsup for its recovery of that portion of an overpayment which results from the subsequent appeal of a case awarded by SSA with a less than fully favorable date of disability onset or awarded for a closed period of disability.

3. **Appeals to Federal District Court:**
Allsup will review cases denied at the Appeals Council level and may, if approp by the Client Company, forward the case to an attorney specializing in SSDI clain an appeal will be made by the claimant in consultation with the attorney. If an granted because of court appeal, Allsup will charge the Client Company a fee o

*Replaced*

*5-3-04*

D 0054
CONFIDENTIAL

(25%) of the retroactive SSDI award not to exceed $4,000. However, if the case includes the recovery of an overpayment, in whole or in part, the $4,000 maximum will not be applicable but nevertheless, the fee shall not exceed $5,000. The applicable fee will be billed to the Client Company and not deducted by Allsup from the recovered overpayment, if any.

**B. Beneficiaries Fees:**
No additional representation fee or additional overpayment recovery fee, respectively, will be charged by Allsup for the filing of ancillary applications for a claimant's Beneficiaries or its recovery of that portion of an overpayment created by an award of SSDI to a claimant's Beneficiaries.

**C. Forwarding of Recovered Overpayments:**
Overpayments recovered by Allsup during the 1st through 15th day of any month will be forwarded to the Client Company by not later than the 22nd day of such month. Overpayments recovered by Allsup during the 16th day through the end of any month will be forwarded to the Client Company by not later than the 7th day of the following month.

**D. Continuing Disability Review (CDR) Representation Fees:**
Allsup's fee for a claimant whose SSDI is continued or reinstated, will be two times (2x) the PIA if accomplished prior to the Hearings level and three times (3x) the PIA if accomplished at the Hearings or Appeals Council level. The applicable fee will be billed to the Client Company.

**E. Withdrawal Fees:**
If the Client Company unilaterally requests to withdraw from a case in process, Allsup will assess the applicable fee described above when a favorable decision is issued on a claim within sixty (60) days following the date it receives the written request for withdrawal. If a favorable decision is not issued on such claim within said sixty (60) day period, a fee of $500 will be assessed for cases in process at the Initial Claim or Reconsideration level. For cases in process at the Hearings or Appeals Council level or in Federal District Court, the fee will be $500, plus travel expenses incurred (up to a maximum of $500), based on appeals filed prior to the date of receipt of the written withdrawal request. The applicable fee will be billed to the Client Company and not deducted from any recovered overpayment.

By signing below, the Client Company confirms its agreement to the services and fees set forth above.

_John Barilla_ _____
Signature

_8/5/02_ _____
Date

_JOHN BARILLA_ _____
Print Name

_VP, Disability Management Service_ _____
Title

The Prudential Insurance Company of America
Company Name

Replaced - 1
5-3-04

# FIRST AMENDMENT

This First Amendment (this "Amendment") is made and entered into as of May 3, 2004 (the "Amendment Effective Date") by and between The Prudential Insurance Company of America, a New Jersey corporation ("Prudential"), and Allsup, Inc., an Illinois corporation ("Allsup"), collectively the "Parties".

## RECITALS

WHEREAS, Prudential and Allsup entered into that certain Managed Disability Benefit Integration Agreement for Services as of December 1, 2001 (the "Services Agreement");

WHEREAS, the Parties now mutually desire to amend the terms of the Services Agreement; and

WHEREAS, Section 20 of the Services Agreement requires a written document to memorialize any amendments to the Services Agreement.

NOW THEREFORE, in consideration of the mutual promises and covenants of the Parties as stated in the Services Agreement and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, the Parties hereto hereby agree as follows:

1. <u>Defined Terms</u>. Any terms not otherwise defined in this Amendment will have the meanings ascribed to them in the Services Agreement.

2. <u>Incorporation</u>. This Amendment is incorporated into the Services Agreement and any conflicting provisions, other than those expressly provided for herein, will be interpreted in accordance with the terms of the Services Agreement.

3. <u>Amendments</u>. The Parties hereby amend and restate Sections 4, 6, 13 and the present service attachment to the Services Agreement entitled "Seamless Social Security Representation and Overpayment Recovery Services-The Prudential Insurance Company of America" ("Service Attachment") and add a new Section 8A to the Services Agreement as follows:

> Section 4: The first sentence of Section 4 ("CANCELLATION") is hereby revised to read: "Except as otherwise provided in Section 8A of this Agreement, either party may cancel this Agreement at any time, upon not less than thirty (30) days prior written notice to the other party."

> Section 6: The present Section 6 shall be deleted in its entirety and the following shall be substituted in lieu thereof: "**INDEPENDENT CONTRACTOR/ALLSUP PERSONNEL:** This Agreement does not

CONFIDENTIAL

constitute and shall not be construed as constituting a partnership or joint venture between Allsup and the Client Company, it being expressly understood that each party shall act as and be deemed to be an independent contractor. In addition, nothing in this Agreement shall create, or be construed to create, the relationship of employer and employee between Allsup and the Client Company; nor shall Allsup's agents, officers or employees be considered or construed to be employees of the Client Company for any purpose whatsoever.

Allsup warrants that all personnel providing services under this Agreement are eligible to work in the United States and are free from any legal or contractual restraints prohibiting working or the exercise of skills, including employment or non-competition agreements with other or former employers; that prior to assigning any individual services hereunder, Allsup shall conduct an investigation regarding the individual's criminal background; that it shall not, without the prior written authorization from the Client Company, assign any person to the Client Company who has been convicted of, pled guilty or nolo contendere to a crime involving breach of trust, dishonesty, injury or attempted injury to any property or person; and that it shall inform its personnel that they must abide by the Client Company's policies and security procedures while on the Client Company's premises."

Section 13: The following name shall be inserted after "Attn:" under the heading "**For the Client Company:**" in replacement of "John Barilla, Vice President": "Al Hemond, Vice President, Disability Claims." In addition, the following fax number shall be inserted after "Fax:" under the heading "**For the Client Company:**" in replacement of "973-548-7854": "973-548-7530."

Service Attachment: Effective August 1, 2004, the Service Attachment shall be deleted in its entirety and a new service attachment, in the form of Exhibit A to this Amendment, shall be substituted in lieu thereof. In this regard, the Parties agree that the fees set forth in such new service attachment shall apply to all pending cases and all new referrals on and after August 1, 2004.

Section 8A: The following new Section 8A shall be inserted in the Services Agreement immediately after Section 8:

Section 8A: "8A. **SYSTEM SECURITY:** If Allsup will be given access to the Client Company's computer system(s) or software ("Systems") in connection with the performance of services under this Agreement, Allsup shall comply with the Client Company's system security policies, procedures and requirements ("Security Regulations"), which are attached hereto as Exhibit B, as may be revised by the Client Company from time to time, and will not tamper with, compromise or circumvent any security or audit measures employed by the Client Company. Allsup shall ensure

D 0057
CONFIDENTIAL

that only those users who are specifically authorized to gain access to the Client Company's Systems gain such access. Allsup shall prevent unauthorized destruction, alteration or loss of information contained in the Client Company's Systems. If at any time the Client Company or Allsup determines that any Allsup employee or representative has sought to circumvent or has circumvented the Client Company's Security Regulations or that an unauthorized person has accessed or may access the Client Company's Systems or a person has engaged in activities that may lead to the unauthorized access, destruction or alteration or loss of data, information or software, Allsup shall immediately terminate any such person's access and immediately notify the Client Company. If the Client Company reasonably determines that an Allsup employee or representative has attempted to or has circumvented the Client Company's Security Regulations, the Client Company may immediately terminate such person's access to the Systems and shall immediately advise Allsup. In addition, a material failure to comply with the Security Regulations shall be a breach of this Agreement entitling the Client Company to cancel this Agreement immediately. The Client Company may audit Allsup's use of the Systems. Allsup agrees that the Client Company may review any information, electronic mail communication, or other data stored on or contained in any computer hard drive, disk, or any storage medium located on the premises of the Client Company to determine whether there has been any breach of security or violation of this Agreement, regardless of whether such computer hard drives, disks, storage media or electronic mail communications are on equipment owned or leased by the Client Company or are brought or sent onto the Client Company's premises by Allsup or its employees or representatives. In the event that the Client Company concludes that there has been a material breach of security or violation of this Agreement by Allsup or its employees or representatives, the Client Company reserves the right to disclose any computer files or electronic mail messages to third parties, including (but not limited to) law enforcement officials, as the Client Company deems appropriate without any prior notice to any individuals who may have written, sent or received such files or messages.

4. <u>Counterparts</u>. This Amendment may be executed in one or more counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

5. <u>Facsimile Copies</u>. For purposes of this Amendment, the Parties agree that counterparts signed and transmitted by facsimile or telecopier shall be treated as an original document and shall have the same effect as an original signature on an original document for all purposes, including, but not limited to, the execution of this Amendment and enforcement of the same.

D 0058
CONFIDENTIAL

IN WITNESS WHEREOF, the Parties by their duly authorized representatives, have executed this Amendment as of the Amendment Effective Date.

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA**

By: _____

Name: _____

Title: _____

**ALLSUP, INC.**

By: _____

Name: _RONALD A. BURGER_

Title: _EVP + COO_

CONFIDENTIAL

## SEAMLESS SOCIAL SECURITY REPRESENTATION AND OVERPAYMENT RECOVERY SERVICES –THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

As described herein, Allsup will represent claimants referred by the Client Company in applications and appeals to establish, or continue entitlement to, disability benefits under Title II of the Social Security Act ("SSDI") and will perform, as applicable to the particular referrals, the services described in this attachment.

The Client Company will refer to Allsup applicants for company sponsored disability benefits that are under age 65 and have been or are expected to be off work long-term (defined as twelve (12) months or longer).

Allsup will screen referrals to determine viable candidates for SSDI entitlement. Those who do not meet the criteria for SSDI will be identified and returned to the Client Company.

Those accepted will be processed for Allsup solicitation of appointment as representative. Applicants will be informed about the financial advantages of securing SSDI entitlement, the impact of integration on their current group disability benefits and the possibility of a retroactive award creating an overpayment of group benefits. Form SSA-1696, Appointment of Representative ("Form SSA-1696"), will be requested.

Upon receipt of the signed Form SSA-1696 from the claimant, the case will be assigned to an Allsup claimant representative. Completed forms will be mailed to the claimant for review and signature. If applicable, such forms will include any ancillary applications for SSDI which relate to the claimant's dependent beneficiaries; provided, that, such dependent beneficiaries reside in the claimant's household and the claimant is legally entitled to act on their behalf (the "Beneficiaries"). When the completed and executed forms are received back by Allsup, all such forms will then be assembled with supporting evidence and filed with the Social Security Administration ("SSA").

If a claim or appeal is denied, Allsup may, if appropriate, initiate proceeding to the next administrative level of appeal. The Client Company will be furnished status reports as claims and appeals move from level to level and will receive a consolidated monthly activity report indicating current year activity of awards, denials and all pending referrals.

The Client Company will be advised, when Allsup is notified of a favorable decision on a claim. When payment detail becomes available, the Client Company will be informed of the date of entitlement, any retroactive SSDI able, the monthly payment history and the date of entitlement to Medicare benefits.

Allsup will manage claims awards in an effort to recover disability overpayments resulting from retroactive awards of SSDI.

Allsup representatives will elicit claimant interest in using this service to settle overpayments created by retroactive SSDI awards. By an arrangement with the claimant, overpayments may be repaid through a preauthorized withdrawal of funds from the claimant's checking or other deposit account.

Allsup will offer overpayment recovery to eligible claimants or to eligible claimants and their Beneficiaries, as the case may be.

The Client Company understands and agrees that:

*Replaced by Aug. 2007 Amendment*

1. It will promptly furnish to Allsup a calculation of the gross overpayment for the retroactive SSDI award (including any overpayment amount related to a claimant's provide calculation formula for Allsup to calculate the overpayment and, in this ev all such calculations made by Allsup.

CONFIDENTIAL

2. It will cease any other overpayment collection efforts against claimants (and their Beneficiaries) who accept and complete this service and will credit to such claimants (and their Beneficiaries) the full amount of any overpayments recovered by Allsup with respect to such claimants (and their Beneficiaries), irrespective of whether the amounts actually tendered by Allsup to the Client Company reflect the withholding by Allsup of any of its fees.

3. Overpayments not recovered by Allsup within sixty (60) days of the receipt of the approved overpayment calculation will be referred back to the Client Company for collection.

**FEES** - Allsup's fees for these services are as follows:

**A. Primary Claimant Fees:**
**1. Basic Fee:**
For each claimant represented (i.e., for whom a signed Form SSA-1696 has been received) and who is awarded SSDI, Allsup will charge the Client Company the following fee:

(a) If all or any portion of the overpayment is recovered by Allsup from the claimant, then Allsup's fee will be $2,800.

(b) If no portion of the overpayment is recovered by Allsup from the claimant within sixty (60) days of Allsup's receipt of the approved overpayment calculation from the Client Company, then Allsup's fee will be $2,200.

(c) If no retroactive SSDI is awarded (and therefore no overpayment created) when the claimant is awarded SSDI, then Allsup's fee will be $2,200.

(d) Notwithstanding anything to the contrary contained in subparagraphs (a) through (c) above, if the claimant referral is a Presumptive Disability Referral, as hereinafter defined, then Allsup's fee shall be $500, irrespective of whether any portion of the overpayment is recovered. A claimant referral shall be deemed to be a "Presumptive Disability Referral" only if each of the following requirements are met: (i) it falls under one of the categories listed in Exhibit 1 to this attachment, as determined by Allsup; (ii) the claimant has not previously filed for SSDI; and (iii) at the time that SSDI is awarded, the claimant's case is at only the Initial Claim level.

The applicable fee will not be deducted by Allsup from the recovered overpayment, if any, rather, the Client Company will be billed by Allsup for such fee.

**2. Appeals of Awards:**
If a case is awarded by SSA with a less than fully favorable date of disability onset, or awarded for a closed period of disability, the Client Company will pay fees based on the above. If it is in the best interest of the claimant to appeal the less than fully favorable award, the Client Company agrees to pay an additional fee that is the lesser of one and one-half times (1-1/2x) the Primary Insurance Amount (i.e. the full, unadjusted, monthly SSDI as of the date of SSA's notice of the award) (the "PIA") or twenty percent (20%) of any additional retroactive SSDI award, for earlier onset approvals or continuation of payment. This additional fee will be billed to the Client Company by Allsup and not deducted from the recovered overpayment, if any. No additional overpayment recovery fee will be charged by Allsup for its recovery of that portion of an overpayment which results from the subsequent appeal of a case awarded by SSA with a less than fully favorable date of disability onset or awarded for a closed period of disability.

**3. Appeals to Federal District Court:**
Allsup will review cases denied at the Appeals Council level and may, if appropri‑ Client Company, forward the case to an attorney specializing in SSDI claims. A d be made by the claimant in consultation with the attorney. If an award is ultimatel appeal, Allsup will charge the Client Company a fee of twenty-five percent (25%)

*Replaced by Aug- 2007 Amendment*

D 0061
CONFIDENTIAL

award not to exceed $4,000. However, if the case includes the recovery of an overpayment, in whole or in part, the $4,000 maximum will not be applicable but nevertheless, the fee shall not exceed $5,000. The applicable fee will be billed to the Client Company and not deducted by Allsup from the recovered overpayment, if any.

## B. Beneficiaries Fees:

No additional representation fee or additional overpayment recovery fee, respectively, will be charged by Allsup for the filing of ancillary applications for a claimant's Beneficiaries or its recovery of that portion of an overpayment created by an award of SSDI to a claimant's Beneficiaries.

## C. Forwarding of Recovered Overpayments:

Overpayments recovered by Allsup during the 1st through 15th day of any month will be forwarded to the Client Company by not later than the 22nd day of such month. Overpayments recovered by Allsup during the 16th day through the end of any month will be forwarded to the Client Company by not later than the 7th day of the following month.

## D. Continuing Disability Review (CDR) Representation Fees:

Allsup's fee for a claimant whose SSDI is continued or reinstated, will be two times (2x) the PIA if accomplished prior to the Hearings level and three times (3x) the PIA if accomplished at the Hearings or Appeals Council level. The applicable fee will be billed to the Client Company.

## E. Withdrawal Fees:

If the Client Company unilaterally requests to withdraw from a case in process, Allsup will assess the applicable fee described above when a favorable decision is issued on a claim within sixty (60) days following the date it receives the written request for withdrawal. If a favorable decision is not issued on such claim within said sixty (60) day period, a fee of $500 will be assessed for cases in process at the Initial Claim or Reconsideration level. For cases in process at the Hearings or Appeals Council level or in Federal District Court, the fee will be $500, plus travel expenses incurred (up to a maximum of $500), based on appeals filed prior to the date of receipt of the written withdrawal request. The applicable fee will be billed to the Client Company and not deducted from any recovered overpayment.

*Replaced by*
*August 2007*
*Amendment*

Exhibit 1

**Presumptive Disability Referral Categories**

A. Amputation of two limbs

B. Amputation of a leg at the hip

C. Allegation of total deafness

D. Allegation of *total* blindness (does not include legally blind)

E. Allegation of bed confinement or immobility without a wheelchair, walker or crutches due to a longstanding condition (excludes recent accident and recent surgery)

F. Allegations of a cerebral vascular accident (CVA) more than three months in the past and continued marked difficulty in walking or using a hand or arm.

G. Allegation of cerebral palsy, muscular dystrophy or muscular atrophy and marked difficulty in walking (e.g., use of braces), speaking or coordination of the hands or arms.

H. Allegation of diabetes with amputation of a foot

I. Uncontrolled Hypertension >180/105 after multiple therapy and with severe end organ damage (neurological, cardiac, renal, vision)

J. Ischemic Heart Disease with intractable angina, post bypass surgery

K. End Stage Renal Disease with frequent dialization

L. Connective Tissue Disease with severe end organ damage

M. Carcinoma not controlled by therapy

N. Traumatic Brain Injury with more than two years with full scale IQ <70

O. Diagnosis of AIDS with CD4 Count of 200/mm3 or less

Replaced
by Aug.
2007
Amendment

**EXHIBIT B**

**PRUDENTIAL INFORMATION SECURITY REQUIREMENTS**

This document outlines the Prudential Information Security Requirements and Prudential Customer Information requirements in effect for all Prudential Systems for non-Prudential personnel being provided access to Prudential Systems. These requirements are subject to change by Prudential from time to time.

1. USER RESPONSIBILITIES – an end User is any person who has access to Prudential information and/or system(s). A User's security responsibilities are to:

   a) Understand his/her responsibility to comply with Prudential's Information Security Control Standards and other Prudential policies, standards, guidelines, and procedures regarding information security.

   b) Report observed or suspected information security violations to the Prudential project manager, the appropriate security group and/or the Information Security Office.

   c) Maintain the confidentiality of his/her password. A user must not share his/her password, personal identification number (PIN), or token with another person.

   d) Change his or her password immediately if he/she thinks the password may have been compromised.

   e) Report any suspected misuse of a user ID or any inappropriate solicitation of a password.

   f) Choose a strong password that can be remembered without writing it down. Never store the password in a login script or programmable device. See Information Security web-site for guidelines on selecting strong passwords.

   g) Log off or lock a terminal or workstation when leaving it unattended.

   h) Ensure that only Prudential approved or licensed software is installed on his/her workstation, laptop, or the network.

   i) Ensure that computers and other portable office devices (i.e. laptops, palms, PDAs, etc.) are either in sight or physically secured at all times.

   j) Ensure that current anti-virus software and virus signature files are installed and configured to scan all files introduced into the Prudential environment. Users must not disable or remove anti-virus protection and Users must prevent access by unauthorized persons.

   k) Ensure that the computer has a password-protected screen saver.

   l) Never load non-approved or unauthorized software including, but not limited to hacking tools, shareware, evaluation software, etc.

   m) Never forward virus warnings to anyone.

   n) If the User is developing applications, ensure that application security controls as defined in the Information Security Control Standards

CONFIDENTIAL

are complied with and company-wide change control requirements are adhered to.

    a)    Never connect, install, or configure equipment (including software tools) to the Prudential network without following an approved change control process and obtaining the appropriate authorizations.

2.    SYSTEM ACCESS (Local and Remote). System access procedures are dependent upon the types of communications services used to connect the site with the Prudential's Data Processing Centers. Regulations regarding system access are as follow:

- System access instructions/procedures must be kept in a secure locked place at all times when not in use.

- Personal computers used to access Prudential's Systems must never connect to the Internet without firewall protection or be connected to a network that does not have Internet firewall protection.

- The User's computer must not be physically connected to two (or more) networks at the same time, when one of those networks is a Prudential network. For example, a User's computer must not be connected to the Prudential LAN and a modem at the same time.

- Software, instructions, and keys needed to facilitate VPN or other remote connections must be provided on a "need to know" basis only.

- Access to computers that connect to the Prudential remote access Virtual Private Network (VPN) using a Digital Subscriber Line (DSL) or cable modem must be controlled in such a manner that all unsolicited Transmission Control Protocol (TCP) and User Datagram Protocol (UDP) packets from the Internet are blocked. The configuration of the access control device (e.g., personal firewall, Instant Internet) must be approved by Prudential's Information Security Office.

- Workstations (including desktops and laptops) must never be left signed on while unattended for any period of time. They must be signed off or locked when not in use.

3.    USER ACCESS. The protection of the System is dependent upon the ability to control access to the System. It is the User's responsibility to be certain that computer accessibility is properly secured.

- Only those individuals whose duties require it can be provided with access to a Prudential system. Each User will be assigned a unique and individual user ID.

D 0065
CONFIDENTIAL

- Use of Prudential systems must be limited to those systems for which the User is authorized.

- When a User no longer requires access to a system, the User must notify Prudential immediately so that user IDs and access can be removed.

4.    PASSWORDS/PINS and Access Tokens.    Passwords and access tokens are critical to the security of the System as they verify that anyone signing on has the authority to do so.

- Passwords/PINs must be changed at least every 30 days.

- Passwords must contain at least one alphabetic and one numeric character.

   - The minimum length of a password is 6 characters.  The minimum length of a PIN is 4 characters.

- Passwords must not be the same as the user ID or contain the user ID.

   - A User's new password/PIN cannot be the same as the previous 6 passwords.

- Passwords/PINs must not be stored in hard copy.

- Passwords/PINs must not be shared.

- Confidentiality of passwords/PINs must be maintained. No operations or support procedure will solicit or require a person to disclose his/her password/PIN to another.

   - Passwords/PINs must never be sent in clear text across the network.

   - User must not know or attempt to know another User's or a Prudential employee's password/PIN.

- When an access token is used, each User is assigned a unique token (e.g. SecurID card, key fob).  Tokens must not be shared and a User must not use or attempt to use another User's access token.

- Tokens must be carried separately from the device used to access Prudential information.

   - User must not obtain access to the System for use by any other User or Prudential employee.

D 0066
CONFIDENTIAL

5.    VIRUS PROTECTION.  Anti-virus measures are essential to assure protection against outside infection.  All non-Prudential personnel must familiarize themselves with Prudential anti-virus policies (stated below) and take, at a minimum, the following steps to assure compliance.

- All electronic files introduced into our distributed computing environment must be scanned before being used. This includes program and executable files, data files, e-mail, e-mail attachments, electronic documents, spreadsheets, etc.

- An approved Prudential anti-virus product using continuous 'on access' scanning must be deployed to minimize User intervention. Scheduled scanning of critical files stored on Intel-based clients and servers must be performed on no less than a weekly basis. Anti-virus protection must be kept current in order to guard against new viruses.

- All virus incidents must be reported to the appropriate Prudential help desk.

- Virus warnings must be channeled to the Enterprise Anti-virus Coordinator and not distributed informally.

- Virus protection must not be disabled.

No computer virus may be intentionally introduced to a system except in the Enterprise Virus Research Lab, or location designated by the CIO.  No one can maintain live viruses for research or any other purposes except the Enterprise Anti-virus Coordinator.

CONFIDENTIAL



# Allsup Inc.
### Social Security Innovations

**BBB**

2006 TORCH Award
Recipient
(World-Class Customer Satisfaction Award)



Manager
Disability Management Services
Prudential Financial
290 W. Mt. Pleasant Avenue
Livingston, NJ 07039

Dear Jodi:

Hope all is well with you. Enclosed please find a copy of the fully executed Second Amendatory Agreement for your records.

I look forward to seeing you in a couple of weeks at the dinner and races.

Best Regards

Scott Rose
National Sales Manager

Enclosure

*2nd Amendment -*

*August, 2007*

*(Al Hemond negotiated this.)*

*Serving the Nation Since 1984*

300 Allsup Place · Belleville, Illinois 62223-8626
www.allsupinc.com

D 0068
CONFIDENTIAL

## Second Amendatory Agreement

This Second Amendatory Agreement (this "Amendatory Agreement") is made and entered into as of the 17th day of August, 2007, by and between The Prudential Insurance Company of America (the "Client Company") and Allsup, Inc. ("Allsup") (each being referred to herein as a "Party" and collectively as the "Parties"), for the purpose of amending that certain Managed Disability Benefit Integration Agreement for Services, dated as of December 1, 2001, as amended by a First Amendment dated as of May 3, 2004 (collectively, the "Services Agreement"). Terms which are not otherwise defined herein are used herein as defined in the Services Agreement.

## WITNESSETH

**Whereas,** the Parties each desire to amend the Services Agreement to, among other things, provide for the future modification of certain of the fees provided for therein and the effective date of the same;

**Now, therefore,** in consideration of the mutual promises, covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties do hereby agree as follows:

1. Effective as of January 1, 2008, the present service attachment to the Services Agreement entitled "Seamless Social Security Representation and Overpayment Recovery Services – The Prudential Insurance Company of America" shall be deleted in its entirety and a new service attachment, in the form of Exhibit A to this Amendatory Agreement, shall be substituted in lieu thereof. Except as provided for below, the revised fees set forth in Exhibit A, shall apply to all cases invoiced by Allsup on or after January 1, 2008.

2. Effective as of January 1, 2009, the then current service attachment to the Services Agreement (Exhibit A) shall be deleted in its entirety and a new service attachment, in the form of Exhibit B to this Amendatory Agreement, shall be substituted in lieu thereof. Except as provided for below, the revised fees set forth in Exhibit B, shall apply to all cases invoiced by Allsup on or after January 1, 2009.

3. Effective January 1, 2010 and annually thereafter, each of the fees provided for under subparagraphs (a), (b) and (c) of Section A.1. of Fees of the then current service attachment to the Services Agreement (Exhibit B), will be increased by the same percentage as the percentage cost-of-living increase announced by the SSA with respect to SSDI and such increased fees shall then be the fees to be invoiced by Allsup under such subparagraphs with respect to all cases, unless and until they are increased again in accordance with the foregoing. By way of example only, if the percentage cost-of-living increase announced by SSA with respect to the year 2010 is 2%, then the fee provided for under subparagraph (a) of Section A.1. of Fees would be $3,355.

 CONFIDENTIAL

4. As amended hereby, the Services Agreement is hereby ratified, confirmed and approved in all respects. In the event of any conflict between the terms of this Amendatory Agreement and the Services Agreement, the terms of this Amendatory Agreement shall govern and control.

5. This Amendatory Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

6. For purposes of this Amendatory Agreement, the Parties agree that counterparts signed and transmitted by facsimile or telecopier shall be treated as an original document and shall have the same effect as an original signature on an original document for all purposes, including, but not limited to, the execution of this Amendatory Agreement and the enforcement of the same.

IN WITNESS WHEREOF, the Parties have duly executed this Amendatory Agreement as of the day and year first written above.

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA**

By: _Dan Dougherty_

Name: _Dan Dougherty_

Title: _VP, Inv Mgmt Svcs_

**ALLSUP, INC.**

By: _Ronald A. Buerges_

Name: Ronald A. Buerges

Title: Executive Vice President & COO

## SEAMLESS ORS® – The Prudential Insurance Company of America

As described herein, Allsup will represent claimants referred by the Client Company in applications and appeals to establish, or continue entitlement to, disability benefits under Title II of the Social Security Act ("SSDI") and will perform, as applicable to the particular referrals, the services described in this attachment.

The Client Company will refer to Allsup applicants for company sponsored disability benefits who are under the applicable age limitation prescribed by the Social Security Administration ("SSA") and have been or are expected to be off work long-term (defined as twelve (12) months or longer). In general, these referrals will be made by the Client Company not later than nine (9) months following the respective effective dates of such individuals' long-term disability benefits.

Allsup will screen referrals to determine viable candidates for SSDI entitlement. Those who do not meet the criteria for SSDI will be identified and returned to the Client Company.

Those accepted will be processed for Allsup solicitation of appointment as representative. Applicants will be informed about the financial advantages of securing SSDI entitlement, the impact of integration on their current group disability benefits and the possibility of a retroactive award creating an overpayment of group benefits. Form SSA-1696, Appointment of Representative ("Form SSA-1696"), will be requested.

Upon receipt of the signed Form SSA-1696 from the claimant, the case will be assigned to an Allsup claimant representative. Completed forms will be mailed to the claimant for review and signature. If applicable, such forms will include any ancillary applications for SSDI which relate to the claimant's dependant beneficiaries; provided, that, such dependant beneficiaries reside in the claimant's household and the claimant is legally entitled to act on their behalf (the "Beneficiaries"). When the completed and executed forms are received back by Allsup, all such forms will then be assembled with supporting evidence and filed with the SSA.

If a claim or appeal is denied, Allsup may, if appropriate, initiate proceeding to the next administrative level of appeal. The Client Company will be furnished status reports as claims and appeals move from level to level and will receive a consolidated monthly activity report indicating current year activity of awards, denials and all pending referrals.

The Client Company will be advised, when Allsup is notified of a favorable decision on a claim. When payment detail becomes available, the Client Company will be informed of the date of entitlement, any retroactive SSDI payable, the monthly payment history and the date of entitlement to Medicare benefits.

Allsup will manage claims awards in an effort to recover disability overpayments resulting from retroactive awards of SSDI. Allsup will offer its overpayment recovery service to

eligible claimants or to eligible claimants and their Beneficiaries, as the case may be.

The Client Company understands and agrees that:

1. It will promptly furnish to Allsup a calculation of the gross overpayment for the period represented by the retroactive SSDI award (including any overpayment amount related to a claimant's Beneficiaries) or promptly provide the calculation formula for Allsup to calculate the overpayment and, in this event, will promptly confirm all such calculations made by Allsup.

2. It will cease any other overpayment collection efforts against claimants (and their Beneficiaries) who accept and complete this service and will credit to such claimants (and their Beneficiaries) the full amount of any overpayments recovered by Allsup with respect to such claimants (and their Beneficiaries), irrespective of whether the amounts actually tendered by Allsup to the Client Company reflect the withholding by Allsup of any of its fees. In no event will any part of the cost of Allsup's fees be passed through/on by the Client Company to such claimants (or their Beneficiaries).

3. Overpayments which are ultimately deemed by Allsup to be unrecoverable, will be referred back to the Client Company for collection.

**FEES** - Allsup's fees for these services are as follows:

### A. Primary Claimant Fees:

1. **Basic Fee.** For each claimant represented (i.e., for whom a signed Form SSA-1696 has been received) and who is awarded SSDI, Allsup will charge the Client Company the following fee:

   (a) If all or any portion of the overpayment is recovered by Allsup from the claimant, then Allsup's fee will be $3,035.

   (b) If no portion of the overpayment is recovered by Allsup from the claimant, then Allsup's fee will be $2,385.

   (c) If no retroactive SSDI is awarded (and therefore no overpayment created) when the claimant is awarded SSDI, then Allsup's fee will be $2,385.

   (d) Notwithstanding anything to the contrary contained in subparagraphs (a) through (c) above, if the claimant referral is a Presumptive Disability Referral, as hereinafter defined, then Allsup's fee shall be $750, irrespective of whether any portion of the overpayment is recovered. A claimant referral shall be deemed to be a "Presumptive Disability Referral" only if each of the following requirements are met: (i) it falls under one of the categories listed in Exhibit 1 to this attachment, as determined by Allsup; (ii) the claimant has not previously filed for SSDI; and (iii) at the time that SSDI is awarded, the claimant's case is at only the Initial Claim Level.

D 0072
CONFIDENTIAL

The applicable fee will not be deducted by Allsup from the recovered overpayment, if any, rather, the Client Company will be billed by Allsup for such fee.

2.  **Appeals of Awards.** If a case is awarded by SSA with a less than fully favorable date of disability onset, or awarded for a closed period of disability, the Client Company will pay fees based on the above. If it is in the best interest of the claimant to appeal the less than fully favorable award, the Client Company agrees to pay an additional fee that is the lesser of one and one-half times (1-1/2x) the Primary Insurance Amount (i.e. the full, unadjusted, monthly SSDI, as of the date of SSA's notice of the award) (the "PIA") or twenty percent (20%) of any additional retroactive SSDI award, for earlier onset approvals or continuation of payment. This additional fee will be billed to the Client Company by Allsup and not deducted from the recovered overpayment, if any. No additional overpayment recovery fee will be charged by Allsup for its recovery of that portion of an overpayment which results from the subsequent appeal of a case awarded by SSA with a less than fully favorable date of disability onset or awarded for a closed period of disability.

3.  **Appeals to Federal District Court.** Allsup will review cases denied at the Appeals Council level and may, if appropriate and if agreed to by Client Company, forward the case to an attorney specializing in SSDI claims. A decision to file an appeal will be made by the claimant in consultation with the attorney. If an award is ultimately granted because of court appeal, Allsup will charge the Client Company a fee of twenty-five percent (25%) of the retroactive SSDI award, not to exceed $4,000. However, if the case includes the recovery of an overpayment, in whole or in part, such maximum will not be applicable but in no event will the fee exceed $5,000. The applicable fee will be billed to the Client Company and not deducted by Allsup from the recovered overpayment.

**B. Dependant Beneficiaries Fees:**
No additional representation fee or additional overpayment recovery fee, respectively, will be charged by Allsup for the filing of ancillary applications for a claimant's Beneficiaries or its recovery of that portion of an overpayment created by an award of SSDI to a claimant's Beneficiaries.

**C. Forwarding of Recovered Overpayments:**
By not later than Friday of each week, Allsup will forward to the Client Company any overpayments recovered by Allsup during the previous week, in the form of separate checks.

**D. Continuing Disability Review (CDR) Representation Fees:**
Allsup's fees for claimants whose SSDI is continued or reinstated, will be two times (2x) the PIA if accomplished prior to the Hearings level and three times (3x) the PIA if accomplished at the Hearings or Appeals Council level. The applicable fee will be billed to the Client Company.

D 0073
CONFIDENTIAL

**E. Withdrawal Fees:**

If the Client Company unilaterally requests to withdraw from a case in process and a favorable decision is issued on such claim following completion of the level the case had achieved at the time Allsup received the written request for withdrawal (e.g., Initial Claim, Reconsideration, Hearings, Appeals Council or Federal District Court), then Allsup will assess the applicable fee described above. If no favorable decision is issued on such claim, then a fee of $500 will be assessed if the case was in process at the Initial Claim or Reconsideration level and a fee of $500 plus travel expenses incurred will be assessed if the case was in process at the Hearings or Appeals Council level or in Federal District Court. The applicable fee will be billed to the Client Company.

**F. General:**

The foregoing fees include all charges which Allsup might otherwise assess in providing the subject services, including, but not limited to, charges for postage, copying, reporting, audits (file reviews), travel (except where otherwise indicated), obtaining medical, vocational or other pertinent evidence or other out-of-pocket expenses, as well as for enhancements to the subject services, which Allsup may agree to provide but for which it determines that no separate charge will apply.

D 0074
CONFIDENTIAL

**Exhibit 1**

**Presumptive Disability Referral Categories**

A. Amputation of two limbs.

B. Amputation of a leg at the hip.

C. Allegation of total deafness.

D. Allegation of *total* blindness (does not include legally blind).

E. Allegation of bed confinement or immobility without a wheelchair, walker or crutches due to a longstanding condition (excludes accident and recent surgery).

F. Allegations of a cerebral vascular accident (CVA) more than three months in the past and continued marked difficulty in walking or using a hand or arm.

G. Allegation of cerebral palsy, muscular dystrophy or muscular atrophy and marked difficulty in walking (e.g., use of braces), speaking or coordination of the hands or arms.

H. Allegation of diabetes with amputation of a foot.

I. Uncontrolled Hypertension >180/105 after multiply therapy and with severe end organ damage (neurological, cardiac, renal, vision).

J. Ischemic Heart Disease with intractable angina, post bypass surgery.

K. End Stage Renal Disease with frequent dialization.

L. Connective Tissue Disease with severe end organ damage.

M. Carcinoma not controlled by therapy.

N. Traumatic Brain Injury with more than two years with full scale IQ<70.

O. Diagnosis of AIDS with CD4 Count of 200/mm3 or less.

D 0075
CONFIDENTIAL

**SEAMLESS ORS® – The Prudential Insurance Company of America**

As described herein, Allsup will represent claimants referred by the Client Company in applications and appeals to establish, or continue entitlement to, disability benefits under Title II of the Social Security Act ("SSDI") and will perform, as applicable to the particular referrals, the services described in this attachment.

The Client Company will refer to Allsup applicants for company sponsored disability benefits who are under the applicable age limitation prescribed by the Social Security Administration ("SSA") and have been or are expected to be off work long-term (defined as twelve (12) months or longer). In general, these referrals will be made by the Client Company not later than nine (9) months following the respective dates of such individuals' long-term disability benefits.

Allsup will screen referrals to determine viable candidates for SSDI entitlement. Those who do not meet the criteria for SSDI will be identified and returned to the Client Company.

Those accepted will be processed for Allsup solicitation of appointment as representative. Applicants will be informed about the financial advantages of securing SSDI entitlement, the impact of integration on their current group disability benefits and the possibility of a retroactive award creating an overpayment of group benefits. Form SSA-1696, Appointment of Representative ("Form SSA-1696"), will be requested.

Upon receipt of the signed Form SSA-1696 from the claimant, the case will be assigned to an Allsup claimant representative. Completed forms will be mailed to the claimant for review and signature. If applicable, such forms will include any ancillary applications for SSDI which relate to the claimant's dependant beneficiaries; provided, that, such dependant beneficiaries reside in the claimant's household and the claimant is legally entitled to act on their behalf (the "Beneficiaries"). When the completed and executed forms are received back by Allsup, all such forms will then be assembled with supporting evidence and filed with the SSA.

If a claim or appeal is denied, Allsup may, if appropriate, initiate proceeding to the next administrative level of appeal. The Client Company will be furnished status reports as claims and appeals move from level to level and will receive a consolidated monthly activity report indicating current year activity of awards, denials and all pending referrals.

The Client Company will be advised, when Allsup is notified of a favorable decision on a claim. When payment detail becomes available, the Client Company will be informed of the date of entitlement, any retroactive SSDI payable, the monthly payment history and the date of entitlement to Medicare benefits.

Allsup will manage claims awards in an effort to recover disability overpayments resulting from retroactive awards of SSDI. Allsup will offer its overpayment recovery service to

eligible claimants or to eligible claimants and their Beneficiaries, as the case may be.

The Client Company understands and agrees that:

1. It will promptly furnish to Allsup a calculation of the gross overpayment for the period represented by the retroactive SSDI award (including any overpayment amount related to a claimant's Beneficiaries) or promptly provide the calculation formula for Allsup to calculate the overpayment and, in this event, will promptly confirm all such calculations made by Allsup.

2. It will cease any other overpayment collection efforts against claimants (and their Beneficiaries) who accept and complete this service and will credit to such claimants (and their Beneficiaries) the full amount of any overpayments recovered by Allsup with respect to such claimants (and their Beneficiaries), irrespective of whether the amounts actually tendered by Allsup to the Client Company reflect the withholding by Allsup of any of its fees. In no event will any part of the cost of Allsup's fees be passed through/on by the Client Company to such claimants (or their Beneficiaries).

3. Overpayments which are ultimately deemed by Allsup to be unrecoverable, will be referred back to the Client Company for collection.

**FEES** - Allsup's fees for these services are as follows:

## A. Primary Claimant Fees:

1. **Basic Fee.** For each claimant represented (i.e., for whom a signed Form SSA-1696 has been received) and who is awarded SSDI, Allsup will charge the Client Company the following fee:

   (a) If all or any portion of the overpayment is recovered by Allsup from the claimant, then Allsup's fee will be $3,290.

   (b) If no portion of the overpayment is recovered by Allsup from the claimant, then Allsup's fee will be $2,585.

   (c) If no retroactive SSDI is awarded (and therefore no overpayment created) when the claimant is awarded SSDI, then Allsup's fee will be $2,585.

   (d) Notwithstanding anything to the contrary contained in subparagraphs (a) through (c) above, if the claimant referral is a Presumptive Disability Referral, as hereinafter defined, then Allsup's fee shall be $1,000, irrespective of whether any portion of the overpayment is recovered. A claimant referral shall be deemed to be a "Presumptive Disability Referral" only if each of the following requirements are met: (i) it falls under one of the categories listed in Exhibit 1 to this attachment, as determined by Allsup; (ii) the claimant has not

previously filed for SSDI; and (iii) at the time that SSDI is awarded, the claimant's case is at only the Initial Claim Level.

The applicable fee will not be deducted by Allsup from the recovered overpayment, if any, rather, the Client Company will be billed by Allsup for such fee.

2. **Appeals of Awards.** If a case is awarded by SSA with a less than fully favorable date of disability onset, or awarded for a closed period of disability, the Client Company will pay fees based on the above. If it is in the best interest of the claimant to appeal the less than fully favorable award, the Client Company agrees to pay an additional fee that is the lesser of one and one-half times (1-1/2x) the Primary Insurance Amount (i.e. the full, unadjusted, monthly SSDI, as of the date of SSA's notice of the award) (the "PIA") or twenty percent (20%) of any additional retroactive SSDI award, for earlier onset approvals or continuation of payment. This additional fee will be billed to the Client Company by Allsup and not deducted from the recovered overpayment, if any. No additional overpayment recovery fee will be charged by Allsup for its recovery of that portion of an overpayment which results from the subsequent appeal of a case awarded by SSA with a less than fully favorable date of disability onset or awarded for a closed period of disability.

3. **Appeals to Federal District Court.** Allsup will review cases denied at the Appeals Council level and may, if appropriate and if agreed to by Client Company, forward the case to an attorney specializing in SSDI claims. A decision to file an appeal will be made by the claimant in consultation with the attorney. If an award is ultimately granted because of court appeal, Allsup will charge the Client Company a fee of twenty-five percent (25%) of the retroactive SSDI award, not to exceed $4,000. However, if the case includes the recovery of an overpayment, in whole or in part, such maximum will not be applicable but in no event will the fee exceed $5,000. The applicable fee will be billed to the Client Company and not deducted by Allsup from the recovered overpayment.

**B. Dependant Beneficiaries Fees:**
No additional representation fee or additional overpayment recovery fee, respectively, will be charged by Allsup for the filing of ancillary applications for a claimant's Beneficiaries or its recovery of that portion of an overpayment created by an award of SSDI to a claimant's Beneficiaries.

**C. Forwarding of Recovered Overpayments:**
By not later than Friday of each week, Allsup will forward to the Client Company any overpayments recovered by Allsup during the previous week, in the form of separate checks.

**D. Continuing Disability Review (CDR) Representation Fees:**
Allsup's fees for claimants whose SSDI is continued or reinstated, will be two times (2x) the PIA if accomplished prior to the Hearings level and three times (3x) the PIA if accomplished at the Hearings or Appeals Council level. The applicable fee will be billed to

D 0078
CONFIDENTIAL

the Client Company.

**E. Withdrawal Fees:**

If the Client Company unilaterally requests to withdraw from a case in process and a favorable decision is issued on such claim following completion of the level the case had achieved at the time Allsup received the written request for withdrawal (e.g., Initial Claim, Reconsideration, Hearings, Appeals Council or Federal District Court), then Allsup will assess the applicable fee described above. If no favorable decision is issued on such claim, then a fee of $500 will be assessed if the case was in process at the Initial Claim or Reconsideration level and a fee of $500 plus travel expenses incurred will be assessed if the case was in process at the Hearings or Appeals Council level or in Federal District Court. The applicable fee will be billed to the Client Company.

**F. General:**

The foregoing fees include all charges which Allsup might otherwise assess in providing the subject services, including, but not limited to, charges for postage, copying, reporting, audits (file reviews), travel (except where otherwise indicated), obtaining medical, vocational or other pertinent evidence or other out-of-pocket expenses, as well as for enhancements to the subject services, which Allsup may agree to provide but for which it determines that no separate charge will apply.

D 0079
CONFIDENTIAL

**Exhibit 1**

**Presumptive Disability Referral Categories**

A. Amputation of two limbs.

B. Amputation of a leg at the hip.

C. Allegation of total deafness.

D. Allegation of *total* blindness (does not include legally blind).

E. Allegation of bed confinement or immobility without a wheelchair, walker or crutches due to a longstanding condition (excludes accident and recent surgery).

F. Allegations of a cerebral vascular accident (CVA) more than three months in the past and continued marked difficulty in walking or using a hand or arm.

G. Allegation of cerebral palsy, muscular dystrophy or muscular atrophy and marked difficulty in walking (e.g., use of braces), speaking or coordination of the hands or arms.

H. Allegation of diabetes with amputation of a foot.

I. Uncontrolled Hypertension >180/105 after multiply therapy and with severe end organ damage (neurological, cardiac, renal, vision).

J. Ischemic Heart Disease with intractable angina, post bypass surgery.

K. End Stage Renal Disease with frequent dialization.

L. Connective Tissue Disease with severe end organ damage.

M. Carcinoma not controlled by therapy.

N. Traumatic Brain Injury with more than two years with full scale IQ<70.

O. Diagnosis of AIDS with CD4 Count of 200/mm3 or less.

D 0080
CONFIDENTIAL

# Prudential's Philosophy

- Intervene early, before:
  - ∧ Employee leaves workplace
  - ∧ Elimination period is over
  - ∧ Clients incur costs for replacement workers
  - ∧ Illness or injury turns into a disability

- Work is an integral part of life.

- Disability is the failure to adapt.

- Disability management is based on:
  - ∧ fostering communication.
  - ∧ forming partnerships.
  - ∧ removing barriers.

FOR INTERNAL USE ONLY



D 0093
CONFIDENTIAL

# Integrated Disability Product

## Long Term Disability Overview

Long Term Disability (LTD) benefits usually pick up where short term benefits end (typically after three to six months of disability). They too, provide benefits which replace a portion of an employee's income while he or she is disabled. LTD benefits usually have two stages.

### Own Occupation/Regular Occupation Stage

During this first stage, (typically two years), an employee must be unable to perform his or her own occupation due to disability to qualify for benefits. This period of time may be used to help an employee adjust to the limitations of a disability and to discover the kind of work that he or she may be able to perform. Our benefits and claim management are focused on providing the incentives and supports to help an employee return to work. Our efforts include reconditioning, rehabilitation, and accommodation when needed, to help overcome the barriers to return to work.

### Any Occupation/Gainful Occupation Stage

During this second stage, an employee must be unable to perform any occupation for which he or she is reasonable fitted by education, training, or experience to continue to qualify for LTD benefits. We encourage and facilitate return to work during this phase whenever appropriate. However since a return to work is not a possibility for every individual, we also provide assistance with the process of filing for Social Security Disability Benefits.

The LTD program typically:

- Provides a monthly benefit expressed as a percentage of pre-disability income
- Provides benefits after an elimination period of 90 days or 26 weeks has been met.
- Cease benefits at normal retirement age
- Provide a Variety of options available to customize LTD plans

Note: Effective 1/1/99 LTD 83500 series contracts have been replaced with Disability Absence and Productivity (DAP) contracts (see page 40).

10

D 0156

 CONFIDENTIAL

# Product Features

## Professional Disability Management

Prudential's disability programs offer focused, knowledgeable intervention to manage disability duration. The focus of our program is to identify circumstances that might prevent a return to work and to be an integral part of the adaptation process. We help employees plan their return to work during the recovery process so that they can return to work even before they reach maximum medical improvement. We view disability claimants as working people who will work again. The tools of our professional disability management include:

**Team Approach**—Each claim is assigned to one accountable Disability Claim Manager. The Disability Claim Manager works together with the Disability Claim Management Team which includes our Medical Directors, clinical experts, Social Security specialists, and management staff. These team members meet regularly to assess claim situations and form plans for disabled employees.

**Consultations**—Disability Management Services has developed relationships with specialty consultants to help us assess disability. Consultants assist us in evaluating the degree of impairment and level of function, assessing the appropriateness of medical care and developing return to work or rehabilitation plans. Our consultations may involve one or more of the following:

- An examination of the employee through one or more office visits
- A review of medial records
- Contact with the attending physician

Consultations provide the objective information needed to make disability claim decisions and may result in better care for our claimants

**Social Security Claimant Assistance**—We recognize that not all disabled employees will recover enough to return to work. Our Social Security Claimant Assistance Program can help these individuals obtain the benefits they have earned during their working years. An approved Social Security Disability Benefit claim provides benefits to the claimant beyond a monthly check. Along with monthly income, the claimant may also be entitled to:

- Protection of earnings record for future
- Cost of Living Increases (which are not offset from LTD Benefits)
- Assistance with rehabilitation
- Medicare

## Plan Design Flexibility

CONFIDENTIAL

Prudential can insure or administer a variety of Short and Long Term Disability plans customized to meet a client's needs. A variety of plan provisions are offered to allow clients to design disability plans which are most appropriate for their organizations. These provisions are described in the following section.

## State of the Art Technology

Introduced in early 1995, our Client/Server based Disability Claim Management System captures extensive information so that we may better manage and assess our claim management activities. The system tracks interventions, telephone calls, interviews and information developed on the claim so that a complete history is available on line to the Claim Manager. Claim data, regardless of whether the claim is short or long term disability, is captured in a single claim record. In addition, all disability claims for an individual employee are grouped together so that any prior claim history is accessible each time a claim is processed.

## Early Intervention

Early intervention is critical to a comprehensive disability management program. During the earliest stages of disability, an employee begins adapting his or her life to the disability. Industry studies indicate that focused, skilled intervention during this critical stage is one of the most effective means of shortening disability durations and returning employees to the work force. We evaluate claims during the earliest stages of disability to identify those individuals who need assistance in returning to work and who risk a long term disability without our involvement. With early intervention, the Disability Claim Manager identifies whether aggressive intervention is needed and begin disability claim management. If intervention does not appear to be warranted, regular follow-ups are maintained based on the circumstances of the claim, to assure that the employee returns to work as expected.

**Note:** Once a disability lifestyle is established, it becomes very difficult to change. Early intervention is a crucial component of Prudential's disability program.

Case 1:08-cv-00022   Document 46-2   Filed 03/27/09   Page 36 of 38

## Social Security Disability Benefits

One of the most important cost containment features of our contracts is the reduction of the LTD benefit by any Social Security Disability Benefits (SSDB) an employee receives or would be entitled to receive if a claim for these benefits were made on a timely basis. Employers should be encouraged to include a family SSDB offset in their contracts to minimize the potential for over insurance. A Social Security offset is also desirable because employers and employees have contributed to the cost of this benefit through OASDI taxes.

Prudential's LTD contracts contain wording which requires claimants to provide proof of "timely and diligent" pursuit of SSDB. This is defined as pursuit of benefits through each level of appeal up to and including the Administrative Law Judge level.

We may estimate a SSDB award and use it to reduce the LTD benefit payable if the employee does not provide proof of this application and appeal process. However, if the employee provides such proof and signs a Reimbursement Agreement promising repayment to Prudential if an award is made, we will not offset estimated Social Security Benefits.

At our discretion, we may defer requiring diligent pursuit of SSDB if an employee is involved in a rehabilitation program that may result in a return to work. In this way, we avoid sending mixed messages about the severity of the condition.

## Benefit Modification for Third Party Liability

See description contained in the STD plan provision section.

## Return - to - Work Provisions

It is often difficult for someone who is recovering from a disabling condition to immediately resume full - time employment. Some employees may suffer from residual deficits that may impede their ability to return to their former job on a full- time basis. In light of these facts, Prudential's LTD contracts offer part - time work provisions which allow disabled employees to gradually come back into the work force without jeopardizing their LTD benefits. The provisions available are:

1) Partial Disability
2) Partial Disability with Zero Day Residual
3) Partial Disability with the Return - to - Work Incentive
4) Partial Disability with Zero Day Residual and Return - to - Work Incentive
5) Rehabilitation Status

30

D 0176
CONFIDENTIAL

# Social Security Claimant Assistance Program (SSCAP) & Allsup

The Social Security Claimant Assistance Program (SSCAP) in Disability Management Services assists claimants in the process of pursuing a claim for Social Security Disability Benefits. SSCAP utilizes a company called Allsup Incorporated to assist the claimant with applying for and pursuing their applications for Social Security Disability Benefits (SSDB) through the final level of appeal.

Through Allsup Inc., claimants obtain Social Security Disability Benefits faster and more frequently. An added benefit is that there is not cost to the claimant for these services. Additionally, Allsup will help recover the retroactive SSDB award from the claimant through a pre-authorized withdrawal from the claimant's bank account. Allsup tracks the status of SSDB on these claims and maintains this information in DCMS in order to keep the DCM informed.

There are two Allsup Social Security Coordinators that are located on site in the Livingston and Portland DMS office locations. The following is their contact information:

**Livingston-** Marguerite Bennett: marguerite.bennett@prudential.com
    Phone: 973-548-7564

**Portland-** William Teer: william.teer@prudential.com,
    Phone: 207-482-4437

## *How do LTD claims get referred to Allsup?*
Allsup receives claims from Prudential in one of two ways:

1. Prudential provides Allsup with a monthly list of active LTD claims where the claimant has been totally disabled for 9 months and there is no SSDB offset on the claim.

2. The DCM identifies that the claim is appropriate for SSCAP services and refers the claim to Allsup via an SSCAP referral in DCMS. (See the next page for the criteria for referring claims to SSCAP).



D 0388
CONFIDENTIAL

**10**